Uploaded: 2022NOV29 09:32 Filed By:Bar# 83093 PANDERSON Reference: EF-113266
E-Filed: 2022NOV29 CHESAPEAKE CC DOWILSON at 2022NOV29 10:47 CL22007099-00

**VIRGINIA:**

**CHESAPEAKE CIRCUIT COURT**

**DONYA PRIOLEAU**
623 Sweet Leaf Place
Chesapeake, VA 23320

***Plaintiff***

v.

**Case No. ________**

**WALMART, INC.**
702 SW 8th St.
Bentonville, AR 72712

**Serve:**

CT Corporation System
4701 Cox Rd.
Ste 285
Glen Allen, VA, 23060-6808

***Defendant***

**COMPLAINT**

Plaintiff Donya Prioleau, by and through the undersigned counsel, states the following in support of her Complaint against Defendant Walmart, Inc.:

**Parties**

1. Plaintiff is an individual who resides at the above address.

2. Defendant Walmart, Inc. ("Defendant" or "Walmart") is a corporation with a principal place of business in Bentonville, Arkansas. Defendant runs Walmart stores across the entire country, including the store at issue, in Chesapeake, Virginia.

**Jurisdiction**

3. This Court has subject matter jurisdiction over this action because the events giving rise to this cause of action occurred in the Commonwealth of Virginia.





4. This Court has personal jurisdiction over Defendant because Defendant caused tortious injury in the Commonwealth of Virginia.

5. This Court is a proper venue because the mass shooting that forms the basis of the Complaint occurred in Chesapeake, Virginia.

**Facts**

6. On the evening of November 22, 2022, Walmart employee and team lead Andre Bing walked into the break room of the Walmart located at 1521 Sam's Circle in Chesapeake, Virginia, and opened fire on his coworkers with a semi-automatic weapon, killing and injuring multiple people.

7. Bullets whizzed by Plaintiff Donya Prioleau's face and left side, barely missing her. She witnessed several of her coworkers being brutally murdered on either side of her.

8. Ms. Prioleau looked at one of her coworkers in the eyes right after she had been shot in the neck. Ms. Prioleau saw the bullet wound in her coworker's neck, the blood rushing out of it, and the shocked look on her coworker's helpless face.

9. Ms. Prioleau ran out of the break room as fast as she could. In the process of escaping, Ms. Prioleau fell, injuring her knee and elbow.

10. Around 10:12 p.m., Chesapeake Police responded to Walmart in response to an active shooter inside the store. The first officer arrived on scene within two minutes, at around 10:14 p.m. and officers entered the store at around 10:16 p.m.

11. Chesapeake police found multiple people dead upon arrival at the store, including the shooter, Andre Bing. Several other Walmart employees would later succumb to their injuries.

12. Plaintiff Donya Prioleau had been employed with Walmart as an overnight stocker and trainer since May 26, 2021. She was responsible for restocking items in the store overnight.

13. The mass shooter, Andre Bing, was a team lead with Walmart and responsible for managing the overnight stocking crew, including Ms. Prioleau.

14. Walmart had employed Mr. Bing since 2010.

15. Upon information and belief, Mr. Bing had been disciplined on several occasions during his employment with Walmart.

16. Upon information and belief, prior to the mass shooting, Mr. Bing had been demoted by management for his improper and disturbing interactions with others, but then reinstated as team lead.

17. Mr. Bing demonstrated a pattern of disturbing behavior leading up to the shooting, which Walmart knew, or should have known.

18. Mr. Bing's behavior prior to the shooting put Walmart on notice on that Mr. Bing was violent and could harm others.

19. Many Walmart employees and managers, including Ms. Prioleau, had observed Mr. Bing exhibit bizarre and threatening behavior leading up to the shooting.

20. On September 10, 2022, Ms. Prioleau submitted a formal complaint on a Walmart Global Ethics Statement Form indicating that Mr. Bing had bizarrely and inappropriately commented on Ms. Prioleau's age, stating: "Isn't your lady clock ticking? Shouldn't you be having kids?" Ms. Prioleau also complained to Walmart that Mr. Bing had harassed her for being poor and being short. Lastly, Ms. Prioleau informed Walmart that Mr. Bing called her a "bitch" under his breath as she walked past.

21. On September 10, 2022, Ms. Prioleau's mother, Brenda Allen, visited Walmart to speak with the store manager, Alysia Mixon, to help advocate for Ms. Prioleau because she was very concerned for her daughter's safety. Ms. Allen inquired as to whether there were any other measures Ms. Mixon could take with respect to Mr. Bing because it appeared their concerns were falling on deaf ears. In response to these concerns, Ms. Mixon informed Ms. Prioleau that there was nothing that could be done about Mr. Bing because he was liked by management.

22. Walmart's management, including Alysia Mixon and others, had received numerous reports that Mr. Bing was bullying, threatening, and harassing other employees.

23. Walmart's management, including Alysia Mixon and others, knew or should have known that Mr. Bing was acting inappropriately, bizarrely, and dangerously.

24. Walmart's management, including Alysia Mixon and others, had received numerous reports that Mr. Bing had been acting inappropriately, bizarrely, and dangerously.

25. Prior to the shooting, Mr. Bing bizarrely asked Ms. Prioleau if he could "borrow her hair."

26. Prior to the shooting, Mr. Bing asked Ms. Prioleau if she liked guns.

27. Prior to the shooting, Mr. Bing had told store employees, including managers, that if he was ever fired, he would retaliate and "people will remember my name."

28. Prior to the shooting, Mr. Bing had told coworkers that he ran over a turtle with a lawnmower just to see its guys spray out, which made him hungry and reminded him of ramen noodles.

29. Mr. Bing had a reputation among Walmart employees for being the team lead to "watch out for." It was well known that Mr. Bing had a bad attitude and would retaliate against

fellow employees for the smallest perceived slight or inadequacy. Mr. Bing was known for being a mean and cruel supervisor.

30. Prior to the shooting, Mr. Bing told coworkers that the government was watching him. He kept black tape on his phone camera so no one could spy on him.

31. Prior to the shooting, Mr. Bing repeatedly asked coworkers if they had received their active shooter training. When coworkers responded that they had, Mr. Bing just smiled and walked away without saying anything.

32. Upon information and belief, Mr. Bing had a personal vendetta against several Walmart employees and kept a "kill list" of potential targets prior to the shooting.

33. Mr. Bing's cellphone was obtained by law enforcement following the shooting. The phone contained a manifesto, which listed several Walmart employees by name as targets due to issues he had with them.

34. Upon information and belief, Walmart and its managers were aware of Mr. Bing's behavior and threats, but kept employing him anyway.

35. Upon information and belief, Mr. Bing was previously disciplined for his bad behavior and harassing other employees, but Walmart kept employing him anyway.

36. Upon information and belief, Mr. Bing was disciplined leading up to the shooting, making his violent outburst predictable.

37. Despite Mr. Bing's long-standing pattern of disturbing and threatening behavior, Walmart did not enact any preventative measures to keep Walmart customers and employees safe.

38. Despite Mr. Bing's long-standing pattern of disturbing and threatening behavior, Walmart continued to employ Mr. Bing.

39. Despite Mr. Bing's long-standing pattern of disturbing and threatening behavior, Walmart continued to permit Mr. Bing access to the breakroom and other common areas.

40. Walmart had a special relationship with Mr. Bing as his employer. Walmart could terminate his employment, restrict his access to common areas, subject him to a background investigation, or subject him to a mental health examination.

41. Walmart knew or should have known about Mr. Bing's disturbing and threatening behavior, but failed to terminate Mr. Bing, restrict his access to common areas, conduct a thorough background investigation, or subject him to a mental health examination.

42. As a direct and proximate result of the shooting, Ms. Prioleau has experienced, and will in the future experience, post-traumatic distress disorder, including physical manifestations of post-traumatic stress disorder and emotional distress.

43. As a direct and proximate result of the shooting, Ms. Prioleau has experienced:

a. Sleeplessness;

b. Flashbacks;

c. Severe anxiety;

d. Stomach pain;

e. Loss of appetite;

f. Nightmares;

g. Knee injury; and

h. Arm injury, among other things

44. As a direct and proximate result of the shooting, Ms. Prioleau has received significant medical care, including care for her knee, elbow, and psychological injuries.

45. As a direct and proximate result of the shooting, Ms. Prioleau will in the future receive significant medical care, including care for her knee, elbow, and psychological injuries.

**COUNT I: NEGLIGENT HIRING AND RETENTION**
**(Defendant Walmart, Inc.)**

46. At all times relevant to this case, Defendant was an employer.

47. At all times relevant to this case, Defendant owed Plaintiff a duty to use reasonable care in:

a. Employing Mr. Bing, who had known propensities for violence, threats, and strange behavior;

b. Retaining Mr. Bing, who had known propensities for violence, threats, and strange behavior;

c. Investigating Mr. Bing's background and history, when he had known propensities for violence, threats, and strange behavior;

d. Subjecting Mr. Bing to a mental health examination, when he had exhibited signs of mental disturbance and strange behavior.

e. Restricting Mr. Bing's access to common areas, when he had known propensities for violence, threats, and strange behavior.

48. Defendant breached the above-listed duties owed to Plaintiff by:

a. Continuing to employ Mr. Bing, who had known propensities for violence, threats, and strange behavior;

b. Continuing to retain Mr. Bing, who had known propensities for violence, threats, and strange behavior;

c. Failing to investigate Mr. Bing's background and history, when he had known propensities for violence, threats, and strange behavior;

d. Failing to subject Mr. Bing to a mental health examination, when he had exhibited signs of mental disturbance and strange behavior.

e. Failing to restrict Mr. Bing's access to common areas, when he had known propensities for violence, threats, and strange behavior, among other things.

49. Andre Bing made comments to other Walmart employees and managers suggesting that he would be violent if fired or disciplined.

50. Andre Bing made comments to other Walmart employees and managers indicating that he liked guns.

51. Andre Bing had a long-standing reputation for being a cruel manager and was known as a manager to avoid.

52. Andre Bing frequently made bizarre and inappropriate comments to Plaintiff and others, which were reported to management at Walmart.

53. Andre Bing had been disciplined in the past, but was permitted to remain employed at Walmart.

54. Walmart continued to employ Mr. Bing, despite receiving many complaints about him.

55. Defendant knew, or should have known, that Andre Bing had violent propensities.

56. As a direct and proximate result of Defendant's breach of duty, Plaintiff:

a. experienced severe pain and suffering, including psychological harm;

b. will in the future experience severe pain and suffering;

c. incurred medical bills;

d. will in the future incur medical bills;

e. lost wages; and

f. will in the future lose wages

**WHEREFORE**, Plaintiff respectfully requests judgment against the Defendant in an amount to be determined at trial, but believed to be **FIFTY MILLION DOLLARS ($50,000,000.00)** in compensatory damages, plus costs of suit, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems just and proper.

**COUNT II: RESPONDEAT SUPERIOR LIABILITY**
**(Defendant Walmart, Inc.)**

57. At all times relevant to this case, Andre Bing was an employee or agent of Defendant.

58. At all times relevant to this case, Andre Bing was acting in the scope of his employment with Defendant.

59. Andre Bing intentionally acted to make Ms. Prioleau believe an immediate harmful or offensive contact would occur when he murdered coworkers sitting next to her.

60. Mr. Bing fired upon his coworkers and others intentionally, to cause emotional distress, physical injury, and death.

61. When Mr. Bing opened fire with a semi-automatic weapon in Walmart on November 22, 2022, his conduct was extreme, outrageous, and intolerable.

62. Andre Bing was engaging in Defendant's business just prior to the shooting.

63. Andre Bing: (a) had access to the breakroom due to this employment with Defendant; (b) was on the premises due his employment to his employment with Defendant; and (c) was able to carry out his heinous acts due to his employment with Defendant.

64. Andre Bing was able to carry out the mass shooting on November 22, 2022, due to the circumstances and instrumentalities provided by Defendant.

65. Andre Bing was present in the breakroom during shift change, which was an ordinary function of his job with Defendant.

66. But for Mr. Bing's employment with Defendant, Mr. Bing would not have been able to carry out his horrific attack upon his fellow employees.

67. Tragically, the shooting arose out of the actions which Defendant hired Mr. Bing to perform, specifically, overseeing and managing fellow employees.

68. Mr. Bing was acting within the ambit of the services that his employer had expected him to perform just prior to the shooting.

69. As a direct and proximate result of Andre Bing's assault and intentional infliction of emotional distress, Plaintiff:

a. experienced severe pain and suffering, including psychological harm;

b. will in the future experience severe pain and suffering;

c. incurred medical bills;

d. will in the future incur medical bills;

e. lost wages; and

f. will in the future lose wages

**WHEREFORE**, Plaintiff respectfully requests judgment against the Defendant in an amount to be determined at trial, but believed to be **FIFTY MILLION DOLLARS ($50,000,000.00)** in compensatory damages, plus costs of suit, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems just and proper.

**Jury Demand**

Plaintiff, by and through the undersigned counsel, hereby demands trial by jury of all issues in this matter.

Respectfully submitted,

Peter Anderson, VSB #83093
MORGAN & MORGAN DC, PLLC
1901 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: (571) 357-7580
Facsimile: (571) 357-7606
Email: panderson@forthepeople.com
*Counsel for Plaintiff*